Michael D. THOMAS, et al., Plaintiffs,

v.

ROHNER–GEHRIG & CO., et al., Defendants.

No. 83 C 5645.

United States District Court, N.D. Illinois, E.D.

March 14, 1984.

Lionel J. Goulet, Arlington Heights, Ill., for plaintiffs.

James P. Chapman, Robert J. Zaideman, James P. Chapman & Assoc., Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

This is an employment discrimination class action[1] brought under 42 U.S.C. §§ 1981, 1982 and 1985, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The matter is now before the court on defendants' motion to dismiss the complaint or for summary judgment, Fed.R.Civ.P. 12(b)(6), 56.

### FACTS

Plaintiffs are former employees of the corporate defendants, Rohner-Gehrig & Co., Inc. ("Rohner") and Panalpina Air Freight, Inc. ("Panalpina").[2] Panalpina was, until late 1982, a subsidiary of Rohner. Both corporations were engaged in the business of international freight forwarding, and apparently were Swiss-owned and incorporated in New York.[3] The ownership and structure of the corporations were identical. Affid. of H.D. Seidel, ¶ 2. According to plaintiffs, most or all of the corporate officers were Swiss or German.

In 1982 and 1983, defendants discharged several individuals, including the named plaintiffs. According to the complaint, the discharged individuals were all born in the United States, and were all replaced by individuals born in Switzerland or Germany. Plaintiffs assert that they were discharged because they were born in the United States rather than in Switzerland or Germany, and that the discharges therefore violated various anti-discrimination statutes. We will address the statutes individually.

### DISCUSSION

#### 42 U.S.C. §§ 1981 and 1982

Plaintiffs first claim that the discharges violated 42 U.S.C. §§ 1981 and 1982.

1. Although the complaint states that the suit is brought as a class action, we have not certified the class.

2. The complaint also names as defendants certain individual corporate officers.

3. Panalpina handled air shipments, and Rohner handled ocean shipments. In late 1982, Panalpina was merged into Rohner, and Rohner's name was changed to Panalpina. Affid. of H.D. Seidel, ¶ 3.

These sections provide:

#### § 1981. Equal rights under the law

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

#### § 1982. Property rights of citizens

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

Defendants argue that plaintiffs' claims under the above sections do not state a cause of action on which relief can be granted. Defendants state that §§ 1981 and 1982 apply solely to claims of racial discrimination, and do not encompass plaintiffs' claims of national origin discrimination.

It is well-established that while §§ 1981 and 1982 encompass claims of racial discrimination, they do not protect against claims of discrimination based on national origin. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968); *Masel v. Industrial Com'n of Illinois*, 541 F.Supp. 342, 344 (N.D.Ill.1982); *Carrillo v. Bell Tel. Co.*, 538 F.Supp. 793, 795 (N.D.Ill.1982). To the extent that plaintiffs' claims are based on national origin discrimination, then, it is clear that §§ 1981 and 1982 afford them no remedy.[4]

4. Some courts have extended the protection of § 1981 to Hispanics. *See, e.g., Ridgeway v. Intern. Broth. of Elec. Wkrs. Etc.*, 466 F.Supp. 595 (N.D.Ill.1979); *Garcia v. Rush-Presbyterian-St. Luke's Medical Ctr.*, 80 F.R.D. 254 (N.D.Ill.1978). Although it can be argued that these cases indicate that § 1981 protects those claiming national origin discrimination, the better view is rather that the courts are merely viewing Hispanics as members of a distinct race, and invoking the statutory protection against racial discrimination. *See, e.g., Garcia, supra,* 80 F.R.D. at 263–64 (finding "a degree of identity between such

Plaintiffs additionally assert, however, that their claim is one of racial discrimination. Arguing that "race" is a vague and relative term, they contend that the national origin discrimination of which they complain is actually race discrimination; i.e., individuals of the American "race" were discharged and replaced by individuals of the Swiss-Germanic "race." Plaintiffs state that

> the notion of race is a taxonomic device that exists in the human mind, not as a division in the objective universe ... today much of modern science's thoughts about the meaning of race are tied to geographic distribution and culture ... So it seems fair to say that no meaningful distinction can be drawn between "race" and "national origin." The notion of race is as variable as man's prejudice....

Plaintiffs conclude that "there can be no distinction between race and national origin in the application of § 1981." Plaintiffs' Memorandum of Law In Opposition To Defendants' Motion To Dismiss And/Or For Summary Judgment, at pp. 15–17.[5]

We decline to accept plaintiffs' argument. Aside from its untoward practical implications,[6] we simply cannot accept this theory as a conceptual matter. We agree with Judge Teitelbaum of the Western District of Pennsylvania, who noted in rejecting a similar argument: "The terms 'race' and 'racial discrimination' may be of such doubtful sociological validity as to be scientifically meaningless, but these terms nonetheless are subject to a commonly-accepted, albeit sometimes vague, understanding." *Budinsky v. Corning Glass Works*, 425 F.Supp. 786, 788 (W.D.Pa.1977) (rejecting

§ 1981 claim based on discrimination allegedly due to plaintiff's Slavic origin).

Thus, we do not consider this complaint to raise a question of racial discrimination. Our understanding of the concept of "race" leads us to conclude that plaintiffs, who apparently are white and were replaced by other whites, have not stated a racial discrimination claim under §§ 1981 or 1982.

■ While it appears, therefore, that we must dismiss those portions of the complaint resting on 42 U.S.C. §§ 1981 and 1982, one last point must be addressed. In *Takahashi v. Fish and Game Commission*, 334 U.S. 410, 419–20, 68 S.Ct. 1138, 1142–43, 92 L.Ed. 1478 (1948), the Supreme Court stated that § 1981 also provides a remedy for discrimination based on alienage. Numerous courts have since held or stated that § 1981 does indeed encompass claims of alienage discrimination. *See, e.g., Ramirez v. Sloss*, 615 F.2d 163, 167 n. 5 (5th Cir.1980); *Guerra v. Manchester Terminal Corporation*, 498 F.2d 641, 653–54 (5th Cir.), *reh. denied en banc*, 503 F.2d 567 (5th Cir.1974); *Carrillo v. Illinois Bell Tel. Co., supra*, 538 F.Supp. at 795. Recently, however, some courts have challenged the continued vitality of the notion that § 1981 applies to citizenship or alienage discrimination. *See, e.g., Ben-Yakir v. Gaylinn Associates, Inc.*, 535 F.Supp. 543, 545 (S.D.N.Y.1982); *De Malherbe v. Intern. Union of Elevator Constructors*, 438 F.Supp. 1121, 1125, 1139–42 (N.D.Cal.1977) (holding that § 1981 does *not* reach private discrimination against aliens). *See also Patel v. Holley House Motels*, 483 F.Supp. 374, 382–83 (S.D.Ala.1979). Although the Court of Appeals for the Seventh Circuit has stated in passing that "§ 1981 applies only to discrimination on the basis of race,"

---

discrimination and racial discrimination," the court observed that Hispanics have been "the victims of invidious group discrimination which, while perhaps not racial in a scientific sense, is racial in its social operation and perception.").

5. Plaintiffs cite *Ortiz v. Bank of America*, 547 F.Supp. 550 (E.D.Cal.1982), a case involving discrimination against an individual of Puerto Rican descent.

6. Acceptance of this theory would open § 1981 to claims of national origin, ethnic or religious discrimination, which the statute was certainly never intended to include. *See Barr v. Hardiman*, 583 F.Supp. 1, 7 (N.D.Ill.1982) (Grady, J.) ("The purpose of [§ 1981] was to 'uproot the institution of slavery and to eradicate its badges and incidents.'") (citations omitted).

*Movement for Opportunity, Etc. v. General Motors*, 622 F.2d 1235, 1250 (7th Cir. 1980) (adopting district court opinion), other decisions of that court indicate that a broader interpretation may be appropriate. *See Inada v. Sullivan*, 523 F.2d 485, 489 (7th Cir.1975); *Roberto v. Hartford Fire Ins. Co.*, 177 F.2d 811, 814 (7th Cir.1949), *cert. denied*, 339 U.S. 920, 70 S.Ct. 622, 94 L.Ed. 1343 (1950).

Plaintiffs' complaint does not allege that plaintiffs were American citizens, or that their replacements were not American citizens. Were that in fact the case, and if § 1981 does prohibit alienage discrimination, we could have a situation amounting to reverse alienage discrimination, and redress might be available under § 1981. Thus, we believe the appropriate action with regard to plaintiffs' § 1981 claim is to dismiss with leave to amend.

### 42 U.S.C. § 1985(3)

Plaintiffs next allege that defendants' actions violated 42 U.S.C. § 1985(3). That section provides, in pertinent part:

**Depriving persons of rights or privileges**

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... [and] do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Defendants argue that the complaint also fails to state a claim under this section. For a number of reasons, we agree.

■ First, § 1985(3) expressly refers to and requires a finding of conspiracy.

Thus, in order to state a § 1985(3) claim, a plaintiff must demonstrate that a conspiracy existed. We find that there are no allegations sufficient to assure the court that the § 1985(3) claim has any basis in fact. Plaintiffs merely recite conclusory allegations that "Defendants, or some of them, did invidiously conspire, with an intent to discriminate ...." Complaint, ¶¶ 5–12. We have held that a bare averment of conspiracy, without factual allegations supporting it, is insufficient to state a claim under § 1985. *Barr v. Hardiman*, 583 F.Supp. 1, 6 (N.D.Ill.1982) (Grady, J.). Because the complaint fails to meet the specific pleading rule, it must be dismissed. *Shah v. MetPath Corp.*, 470 F.Supp. 158, 161–62 (E.D.Pa.1979)

■ Second, insofar as plaintiffs are complaining of deprivations of equal protection of the laws, their failure to allege state action is fatal to this claim. Any violation of the Fourteenth Amendment sought to be redressed through 42 U.S.C. § 1985(3) must be predicated on state action. *See, e.g., Cohen v. Illinois Institute of Technology*, 524 F.2d 818, 828–29 (7th Cir.1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976); *Bianco v. American Broadcasting Companies*, 470 F.Supp. 182, 184 (N.D.Ill.1979) (Grady, J.). *Cf. United Broth. of Carpenters & Joiners v. Scott*, — U.S. —, 103 S.Ct. 3352, 3357, 77 L.Ed.2d 1049 (1983).

■ Third, we doubt that a conspiracy is possible in this case, given that the defendants are two interrelated corporations and certain of their corporate officers. According to the affidavit of an assistant to the corporate president, the defendant corporations were, for all intents and purposes, interchangeable. Affid. of H.D. Seidel, ¶ 2. *See Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir.1972) (if conduct is essentially single act of single entity, court will not find conspiracy).

Finally, if 42 U.S.C. § 1981 is inapplicable to this case,[7] it seems clear that plaintiffs are seeking redress only for alleged violations of Title VII. In *Great American Federal Savings & Loan Association, et al. v. Novotny*, 442 U.S. 366, 375–76, 99 S.Ct. 2345, 2350–51, 60 L.Ed.2d 957 (1979), however, the Supreme Court held that violations of Title VII cannot be asserted through § 1985(3). *See also Wright v. Methodist Youth Services, Inc.*, 511 F.Supp. 307 (N.D.Ill.1981).

For all of the above reasons, we dismiss plaintiffs' 42 U.S.C. § 1985(3) claim.[8]

### 42 U.S.C. § 2000e et seq. (Title VII)

Plaintiffs finally contend that defendants' actions violated Title VII, which provides that it is unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or *national origin*." 42 U.S.C. § 2000e–2(a)(1) (emphasis added). Plaintiffs' complaint alleges that they were discharged on account of their national origin, which they label "native born American," and thus are entitled to the protection of Title VII.[9] Defendants, on the other hand, assert that national origin discrimination would only encompass claims based on "a person's ancestry, heritage, background or possession of characteristics which are typically identified with ancestral groups." Defendants' Memorandum Of Law In Support Of Motion To Dismiss The Complaint And For Summary Judgment, at 5. ("Defendants' Memorandum"). Defendants argue that

national origin discrimination does not include discrimination based solely on "the mere fact of place of birth." Defendants' Memorandum, at 18.

This appears to be a case of first impression; no federal court has directly considered whether individuals who allegedly are discriminated against solely because they were born in the United States fall within the "national origin" language of Title VII.[10]

There is a dearth of authority regarding the meaning of "national origin." In *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88, 94 S.Ct. 334, 336, 38 L.Ed.2d 287 (1973), the Supreme Court stated, "[t]he term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *See also Garcia v. Gloor*, 618 F.2d 264, 269 (5th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981) ("national origin" defined as "place of birth [or] place of birth of [one's] forebears"). Thus it appears from these references that a plaintiff discriminated against because of birth in the United States has a Title VII cause of action.

Moreover, the legislative history regarding the meaning of "national origin," though "quite meager," *Espinoza, supra*, 414 U.S. at 88, 94 S.Ct. at 336, also indicates that discrimination based solely on birthplace, American or otherwise, is prohibited. Congressman Roosevelt, Chairman of the House Subcommittee which reported the bill, defined "national origin" as "the country from which you or your fore-

---

**7.** Unless the plaintiffs can demonstrate that they are American citizens, were replaced by non-citizens, and were discriminated against because they were citizens, § 1981 clearly does not apply here. *See* discussion of § 1981, *supra* at 672–73.

**8.** We further note the Supreme Court's recent statement in *United Broth. of Carpenters, supra*, 103 S.Ct. at 3359: "[I]t is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause ...."

**9.** As noted earlier, plaintiffs also argue that the alleged discrimination amounted to racial discrimination. In view of the fact that we have already discussed and rejected this argument, we address the Title VII claim only in the context of national origin discrimination.

**10.** One district court has noted *in dicta* "[I]t would be a violation of Title VII if a German employer with a plant in Pennsylvania discriminated against local residents because they and/or their ancestors came from the United States." *Roach v. Dresser Ind. Valve & Instrument Division*, 494 F.Supp. 215, 216 (W.D.La. 1980).

bears came ... You may come from Poland, Czechoslovakia, England, France, *or any other country.*" 110 Cong.Rec. 2549 (1964) (emphasis added).

Finally, Title VII was enacted to ensure that all American citizens have equal employment opportunities, and to prevent arbitrary employment discrimination. *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 763, 96 S.Ct. 1251, 1263, 47 L.Ed.2d 444 (1976). These purposes cannot be accomplished if employers are allowed to discriminate against employees on the basis of immutable characteristics or factors over which individuals have no control, such as country of birth. *Garcia v. Gloor, supra,* 618 F.2d at 269.

██ Thus, employment discrimination against American citizens based merely on country of birth, whether that birthplace is the United States or elsewhere, contradicts the purpose and intent of Title VII, as well as notions of fairness and equality. Plaintiffs' complaint alleges that plaintiffs were discharged solely because they were born in the United States. We believe this is sufficient to state a Title VII cause of action based on national origin discrimination. Accordingly, we deny defendants' motion to dismiss plaintiffs' Title VII claim for relief.

## CONCLUSION

For the reasons above, and with the qualifications set forth in the opinion, we dismiss plaintiffs' 42 U.S.C. §§ 1981, 1982 and 1985(3) claims. We give plaintiffs fourteen days to amend their complaint. We deny defendants' motion to dismiss plaintiffs' Title VII claim.[11]

11. Defendants additionally argue in their motion that a class action suit is inappropriate in this case. We will not address that issue at this time. Instead, we direct plaintiffs to file a motion for class certification by April 2, 1984. Defendants have until April 23, 1984, to respond. Plaintiffs are given until May 7, 1984, to file a reply. The parties may supplement the information and arguments already presented in their memoranda. The court is particularly

interested in the issues of numerosity, commonality of questions of fact, and the adequacy of representation by the named plaintiff(s).

Defendants also argue that certain of the plaintiffs' claims are not timely brought. We reserve judgment on this question until we decide the class certification question, and until we see whether plaintiffs can amend their complaint to make § 1981 applicable, thereby triggering a longer statute of limitations.