**Robert J. BILKA, Plaintiff,**

v.

**PEPE'S INC., Defendant.**

**No. 84 C 4065.**

United States District Court, N.D. Illinois, E.D.

Jan. 9, 1985.

---

Robert J. Bilka, pro se.

Lawrence Reich, Lederer, Reich, Sheldon & Connelly, Chicago, Ill., for plaintiff.

Mark L. Shapiro, Vincent A. Lavieri, Rudnick & Wolfe, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Robert J. Bilka ("Bilka"), a former accountant for defendant Pepe's Inc. ("Pepe's"), has sued Pepe's under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* He alleges discrimination on the basis of his national origin: American. Pepe's has moved to dismiss the com-

plaint for failure to state a claim for relief and for lack of jurisdiction. For the reasons stated below, the motion is granted in part and denied in part.

■ For the purposes of this motion to dismiss, we assume that the facts alleged in the complaint are true. We cannot grant the motion unless it appears beyond doubt that Bilka can recover on no set of facts consistent with his allegations. *See Hishon v. King & Spalding,* ── U.S. ──, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). With these standards in mind, we turn to the complaint.

Pepe's employed Bilka as an accountant from January 1981 through April 13, 1983, when it fired him, allegedly because he is an American. Beginning in August 1983, agents of Pepe's made threats to Bilka warning him against taking any legal action. The complaint does not disclose what the nature of these threats were. Apparently fearful, Bilka did not file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") until February 9, 1984, 302 days following his discharge.

The complaint (as twice amended) contains three counts. Count I alleges national origin discrimination violating Title VII. Count II is a state law claim, alleging breach of contract for failure to give Bilka a 10% pay raise in 1983. Count III is a separate Title VII claim which alleges that Pepe's has given Bilka's prospective employers negative references since Bilka filed this action. This reprisal allegedly constitutes a separate violation of Title VII. Pepe's has moved to dismiss all three counts.

■ Count II must be dismissed because it obviously does not come within the Court's pendent jurisdiction. The breach of contract claim plainly does not derive from the same nucleus of operative facts as either Title VII claim. Accordingly, the Court lacks subject matter jurisdiction over that claim. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

■ Pepe's argues that Count I must also be dismissed because the EEOC charge upon which it is based was filed late. We disagree. It is undisputed that the charge was filed 302 days after the last act of discrimination. Normally, of course, in a "deferral-state" like Illinois, a federal court lacks jurisdiction over a Title VII claim if a claimant files an EEOC charge[1] later than the 300th day. *See* 42 U.S.C. § 2000e–5(c), (e).[2] However, as Pepe's concedes, this 300-day limit is not jurisdictional in the absolute, but rather is akin to a statute of limitations and as such "is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). We think that the complaint's allegations of threatened reprisal, if true, estop Pepe's from raising the limitations issue. If, as we must assume, Pepe's made these threats, and if Bilka relied reasonably[3] on these threats in hesitating to go to the EEOC, then Pepe's must

---

1. The fact that Bilka filed his charge with the EEOC rather than with the appropriate Illinois administrative agency does not bar this suit. In a "deferral" state like Illinois, the EEOC automatically refers charges to the state agency for initial consideration. *See Zewde v. Elgin Community College,* 601 F.Supp. 1237, 1240 (N.D.Ill. 1984); *Stoecklein v. Illinois Tool Works Corp.,* 589 F.Supp. 139, 144 n. 7 (N.D.Ill.1984).

2. As we have previously held in *Zewde* and *Stoecklein, see* n. 1 above, under *Mohasco Corp. v. Silver,* 447 U.S. 807, 814 n. 16, 100 S.Ct. 2486, 2491, 65 L.Ed.2d 532 (1980) a plaintiff must file his EEOC charge within 240 days of the last discriminatory act in order to be sure of com-

plying with the time requirements of the Act. The plaintiff may file the charge later than 240 days if the relevant state agency terminates its proceedings on or before the 300th day. *See Zewde,* 601 F.Supp. at 1241–1242. As noted below, Bilka filed his charge three weeks after the last alleged threat of retaliation. Thus, because we toll the statute on equitable grounds below, the charge was filed well within the 240-day *Mohasco* limit.

3. As noted earlier, the complaint alleges that Pepe's began making threats in August 1983. The EEOC charge states that the threats continued until January 20, 1984, three weeks before Bilka filed his charge. At this point we do not

be estopped from invoking the limitations issue, which they allegedly created in the first place by their unlawful[4] threats of reprisal.

Pepe's does not confront the allegations of threats in connection with the limitations issue. Instead, it cites a test for equitable tolling set forth in *Wolfolk v. Rivera*, 729 F.2d 1114 (7th Cir.1984), and argues that Bilka does not satisfy this test; the limitations period should be tolled when a claimant is ignorant of facts supporting a discrimination charge because of "circumstances beyond his control." 729 F.2d at 1117; *see also Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407, 410–11 (7th Cir.1984). We agree that Bilka does not satisfy the *Wolfolk* test, but Pepe's is firing at the wrong target. The issue here is estoppel, which focusses not on Bilka's knowledge of the facts underlying the discrimination but on Pepe's alleged misbehavior and Bilka's reliance on it. The *Wolfolk* test is relevant when the claimant argues that the statute must be tolled because he or she did not know of the facts. This ignorance may or may not toll the limitations clock, depending on whether "circumstances beyond the claimant's control," which might include some employer conduct, cloaked the relevant facts. But the *Wolfolk* test is not the only one which may toll the statute. *Zipes* makes clear that claimant may invoke a whole range of equitable arguments, including estoppel, to toll the statute. Estoppel was not an issue in *Wolfolk*. Moreover, *Wolfolk* involved

federal employment discrimination, which allows for narrower exceptions to the limitations requirement. "[P]rivate employees may have a wider range of equitable exceptions at their disposal under *Zipes* ..." 729 F.2d at 1119. In sum, regardless of Bilka's knowledge of the alleged discrimination, Pepe's may be estopped from raising the limitations issue because of its own alleged misconduct.[5]

■ Defendant also argues that Count I must be dismissed for failure to state a claim upon which relief may be granted. Specifically, Pepe's argues that national origin discrimination against Americans is not actionable under Title VII. We disagree. Title VII outlaws, without exception, discrimination based on "national origin." 42 U.S.C. § 2000e–2(a)(1). We see no reason for reading an exception into the statute. The rare case when proved of an employer discriminating against an employee for being born an American is no less reprehensible than discriminating against one for being born an Italian, Mexican or any other nationality. To our knowledge, just one other reported case has addressed this issue directly. *See Thomas v. Rohner-Gehrig*, 582 F.Supp. 669, 674–75 (N.D.Ill. 1984) (Grady, J.).[6] We agree with the *Thomas* court's analysis, and its conclusion that "employment discrimination against American citizens based merely on country of birth, whether that birthplace is the United States or elsewhere, contradicts the purpose and intent of Title VII." 582 F.Supp. at 675.

know what the nature of these threats was. It might be that Pepe's threatened to "blacklist" Bilka, as Count III alleges they later did. While most of an employer's usual threats—firing, demotion, pay-cut—lose their bite after the employment ends, we cannot say as a matter of law that a former employer has no weapons with which he can reasonably frighten the former employee. *See Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1166 (10th Cir.1977) (recognizing that retaliation against former employees is both factually possible and actionable under Title VII).

4. While these threats that occurred before the charge was filed possibly violate § 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), Bilka has not set forth a separate claim for relief based on these threats.

5. In so holding, we express no opinion on the facts. If no threats occurred, or if Bilka's reliance on them was unreasonable, then the limitations requirement may preclude this lawsuit. Because this threshold issue goes to our jurisdiction, we will dispose of it first. The parties should be prepared to proceed with this issue in an expedited manner.

6. In *Earnhardt v. Com. of Puerto Rico*, 744 F.2d 1 (1st Cir.1984), the Court affirmed the district court's finding of national origin discrimination against an American. The case does not discuss the issue of whether Title VII forbids such discrimination.

Pepe's argues alternatively that the complaint does not allege enough facts to support the claim of national origin discrimination. Pepe's points out that in *Thomas* the complaint alleged that the defendant was a foreign-owned corporation, and that the plaintiffs were replaced by Swiss and German employees. In contrast, Bilka's complaint merely alleges that he was fired because of his "national origin—American." [7] We believe that the complaint, while sparse, alleges enough to satisfy the notice pleading requirements of the Federal Rules. We note first that *Thomas* did not rely on the above factual allegations or discuss pleading requirements in reaching its holding. Moreover, we do not think the specific *Thomas* facts are necessary to recovery. It might be, for example, that an American employer would prefer foreign workers because of a bias that they are more docile than Americans.

More importantly, we recently denied a motion to dismiss a similar allegation of discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq. See Oxman v. WLS–TV*, 595 F.Supp. 557, 562–63 (N.D.Ill.1984). In *Oxman* the plaintiff merely alleged that he had been fired "on the basis of his age which was 60." *Id.* at 562. The defendant argued that the complaint was deficient for not alleging the prima facie elements of

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 824, 36 L.Ed.2d 668 (1973). We rejected this argument because proving the *McDonnell-Douglas* prima facie elements is not a prerequisite to recovery in every ADEA or Title VII case. *Id.* at 563. Applying the liberal notice pleading standard of *Conley v. Gibson, supra,* we denied the motion to dismiss because it was not beyond doubt that the plaintiff could prove no set of facts entitling him to relief. *Id.*

This case mirrors *Oxman.* Bilka's bare allegation of national origin discrimination is similar to Oxman's allegations of age discrimination. By demanding that Bilka allege that Pepe's is foreign owned or that Pepe's replaced him with a foreign employee, Pepe's essentially is arguing that *Bilka* allege the elements of a *McDonnell-Douglas* prima facie case. As we held in *Oxman*, that is not necessary under Title VII or Fed.R.Civ.P. 8(a)(2). This is not to say we approve of such naked pleading or that such brevity will always satisfy the Rules. But we think in this case that Pepe's has adequate notice on the general basis of Bilka's claim and should be able to prepare a response.[8]

Finally, Pepe's argues that Count III fails to state a claim for relief for retaliation. Count III alleges in part that "[s]ince the filing of his national origin

---

7. Bilka's EEOC charge states additional facts: I was informed that I was being fired because I was too American. I was told I had too many American ideas, e.g.; (sic) union activities, teaching the Mexican workers English and how to file tax returns etc.

At this point we are not sure whether these facts amount to "national origin discrimination" as meant in Title VII. Being fired for having ideas which are labelled "American" is not the same as being fired for being born American. However, Title VII arguably can be read broadly to include such discrimination. We do not now express an opinion on this issue, pending further development of the facts surrounding Bilka's discharge.

8. In *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984), the Court commented that the very broad pleading standard of *Conley* "has never been taken literally." Yet after *Sutliff* was decided, the Supreme Court reiterated the *Conley* standard in *Hishon, supra.* Without citing *Hishon*, the Seventh Circuit fol-

lowed *Sutliff* in *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984). One court in this district has criticized the Seventh Circuit's reading of *Conley. See Biggus v. Southmark Mgt. Corp.*, 582 F.Supp. 883, 885 n. 3 (N.D.Ill.1984). Fortunately, we need not choose between the conflicting standards of the two higher courts, because we think the complaint satisfies the arguably narrower *Sutliff* test:

The complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.

*Sutliff*, 727 F.2d at 654. The complaint directly alleges the ultimate fact of national origin discrimination. Given the strictures of Rule 11, we may fairly infer that evidence bolstering this allegation will be introduced at trial. *See* n. 7 above.

charge with the EEOC and this lawsuit by [Bilka], [Pepe's] has retaliated against [Bilka] by giving negative references to employment agencies and prospective employers." Bilka alleges that this conduct violates § 704(a) of Title VII, 42 U.S.C. § 2000e–3(a). That section provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Title VII defines an "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). Pepe's concludes from these two sections that Bilka has not stated a claim for relief under § 704(a) because the alleged reprisals occurred long after the end of the employment relationship; thus, Bilka was no longer an "employee," and Pepe's could not have committed "an unlawful employment practice" under § 704(a). We disagree with this overly literal interpretation of the statute.

In *Rutherford v. American Bank of Commerce,* 565 F.2d 1162 (10th Cir.1977), the Court held that an employer violates § 704(a) when it gives bad references in retaliation for a former employee's assertion of Title VII rights. Rejecting the argument that § 704(a) does not apply to "former employees," the court concluded that "[t]he argument is based on a literal reading of the statute which, if followed, would result in a narrow interpretation of the statute not justified by its legislative history. A statute which is remedial in nature should be liberally construed." *Id.* at 1165. Other courts have also held that a former employee may state a claim for relief under § 704(a) based on reprisal. *See Pantchenko v. C.B. Dolge Co., Inc.,* 581 F.2d 1052, 1055 (2d Cir.1978); *Czarnowski v. Desoto, Inc.,* 518 F.Supp. 1252,

1257 (N.D.Ill.1981) (Flaum, J.). We think these opinions correctly interpret Title VII in a way which furthers its remedial purposes.[9] Section 704 was plainly written to protect employees who assert Title VII rights. If an employee asserts her rights after the relationship is over, her assertion nevertheless grows out of that relationship. "[T]he statute prohibits discrimination related to or arising out of an employment relationship, whether or not the person discriminated against is an employee at the time of the discriminatory conduct." *Pantchenko,* 581 F.2d at 1055. If Pepe's narrow reading of the statute were correct, employers could easily retaliate against former employees against whom they have discriminated. Section 704(a) was obviously written to prevent employers from chilling employees' assertions of Title VII rights, and the section should be read broadly to protect former employees as well as current employees.

In conclusion, Pepe's motion to dismiss Count II is granted. In all other respects, its motion to dismiss is denied. It is so ordered.

---

**9.** Pepe's relies on *Ferguson v. Mobil Oil Corp.,* 443 F.Supp. 1334, 1339 (S.D.N.Y.1978). *Ferguson* held that "blacklisting" a former employee is not prohibited under § 703(a) or (d) of Title VII, 42 U.S.C. 2000e–2(a), (d). The Court did not discuss whether such actions would violate § 704(a). To the extent *Ferguson* conflicts with our holding, we decline to follow it.