Michael S. CHAIFFETZ,
Plaintiff-Appellant,

v.

ROBERTSON RESEARCH HOLDING,
LTD. and Robertson Research (U.S.),
Inc., Defendants-Appellees.

No. 85–2533.

United States Court of Appeals,
Fifth Circuit.

Aug. 27, 1986.

Margaret A. Harris, Stuart M. Nelkin, Carol Nelkin, Houston, Tex., for Michael S. Chaiffetz.

Norman Riedmueller, Houston, Tex., for Robertson Research Holding.

Stanley J. Krist, Houston, Tex., for Robertson Research, Inc.

Before GEE, RANDALL and DAVIS, Circuit Judges.

GEE, Circuit Judge:

In this action, Michael Chaiffetz contends that the appellees dismissed him from employment solely because he was an American; this dismissal, he continues, violates both Title VII and 42 U.S.C. § 1981. The district court disagreed, providing a variety of reasons why these provisions are not implicated here. We hold that the district court erroneously found a legitimate, nondiscrimatory reason for Chaiffetz's dismissal and that its findings and conclusions do not comport with the requirements of Fed. R.Civ.P. 41(b). We therefore reverse the judgment and remand the case for further proceedings.

Appellee Robertson Research Holding, Ltd. ("RRHL") is the British corporate parent to a worldwide group of companies, including appellee Robertson Research, Inc. ("RRUS"). Founded in 1978, RRUS is a Texas corporation in the business of petroleum exploration consulting. In 1979, it hired appellant Chaiffetz, a white American citizen, as a geologist. He joined a workforce composed chiefly of Americans, with some British and Columbian employees as well.

In 1982, declining oil prices forced RRUS to reduce its workforce, the axe falling primarily on the American contingent. As of June 1982, RRUS employed 66 Americans, 10 British, and four Columbians; two years later, a much smaller workforce consisted of only 40 Americans, 10 British, and three Columbians. One of those let go was Chaiffetz, dismissed in December 1982. This apparently resulted from a decision to release him rather than a Columbian who was a "superstar" for the company, an American woman being paid less than the others, and a British subject.

Chaiffetz brought this action against RRHL and RRUS, alleging that his dismissal constituted discrimination on the basis of his national origin in violation of Title VII, 42 U.S.C. § 2000e *et seq.* Later adding a 42 U.S.C. § 1981 claim, he sought injunctive, declaratory, and compensatory relief. After he concluded his case-in-chief, both appellees moved for involuntary dismissal under Fed.R.Civ.P. 41(b). Ruling from the bench, the court granted both motions. It later filed written findings of fact and conclusions of law, which provided several grounds for dismissal. On appeal, we review the trial court's conclusions.

Chaiffetz argues that the appellees intentionally discriminated against him because he was an American. Title VII forbids discharging one because of his national origin. 42 U.S.C. § 2000e–2(a)(1). This provision has before been held to prohibit discrimination against American citizens. *See*

*Bilka v. Pepe's, Inc.*, 601 F.Supp. 1254, 1257 (N.D.Ill.1985); *Thomas v. Rohner-Gehrig*, 582 F.Supp. 669, 674–75 (N.D.Ill. 1984). We agree that employment discrimination based only on one's country of birth, "whether that birthplace is the United States or elsewhere, contradicts the purpose and intent of Title VII." *Rohner-Gehrig*, 582 F.Supp. at 675. Appellees do not really argue otherwise; rather, the debate here concerns whether the court's perceived "legitimate, nondiscriminatory reason" for Chaiffetz's discharge exists in fact. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).

In a Title VII case, the plaintiff "carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a 'discriminatory criterion illegal under the act.'" *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), *quoting International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). In presenting his case-in-chief, the Title VII plaintiff usually also introduces evidence suggesting that any explanation the defendant might offer is mere pretext for illegal discrimination. Should the plaintiff meet these burdens, the defendant then "must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). For the defendant to meet its burden of production, this evidence must be sufficient to raise "a genuine issue of fact as to whether (the employer) discriminated against the plaintiff." *Id.* at 256, 101 S.Ct. at 1095.

The record shows that Chaiffetz met the burdens the law imposes. Wallace Dow, a former vice president of RRUS, testified that the company consciously based its dismissals on the nationalities of its employees. Evidence also suggests that any posited costcutting motive would be pretextual; in September 1983, after his discharge, Chaiffetz saw an advertisement in the *Oil and Gas Journal* describing exactly the job he had held at RRUS. Contacting the Texas Employment Commission to obtain more information, he discovered that RRUS had placed the advertisement and that it was the kind of ad usually placed to help an alien obtain labor certification and a green card. When he queried RRUS, however, Chaiffetz was told that the position did not in fact exist. While we do not say that such evidence, standing alone, suffices to satisfy Chaiffetz's burden of persuasion, it suffices to meet his burden of production. For appellees to prevail, therefore, they must meet the dictates of *Burdine*, 450 U.S. at 254–56, 101 S.Ct. at 1094–95.

■ We say this despite the trial court's contrary findings and conclusions. Disregarding the above-mentioned evidence, it seized instead upon an explanation for Chaiffetz's dismissal that we find ourselves unable to follow. In its findings and conclusions, the court ruled that a legitimate reason existed: "Defendants instituted a reduction in work force, there being insufficient work all round and particularly in Plaintiff's specialty and that the employees retained by Defendants were those employees with whom the Defendants had a greater investment." The court had earlier expressed this view in an observation from the bench:

> What the heck is the matter with the idea of having invested a great deal of money in bringing people over here when you couldn't find them here and then keeping them. Maybe you'll never get your money back, but at least if there isn't work for everybody to do, keep the ones you've got the most invested in.

We have great difficulty in following this reasoning. In his brief, Chaiffetz describes the "investments" RRUS had in its foreign employees. First, it had paid for legal assistance in obtaining work visas for them. Second, it had paid for accounting assistance to foreign workers preparing

their United States tax returns. Third, it gave them expense-paid trips home annually. The first sounds not like an investment but like a start-up cost. Having spent money to obtain a certain work force, RRUS cannot later recoup this cost by deciding whom to keep and whom to fire. The latter two expenses are not investments; rather they are continuing costs that could actually be reduced by keeping Americans and firing foreign workers.

We cannot affirm a dismissal based on such reasoning. In general, Rule 41(b) dismissals are viewed with disfavor:

> Except in unusually clear cases the district judge can and should carry the defendant's Rule 41(b) motion with the case—or simply deny it, since the effect will be the same—let the defendant put on his evidence, and then enter a final judgment at the close of the evidence.

*Rigel Fiber Corp. v. Anderson Gin Co.,* 512 F.2d 784, 793 n. 19 (5th Cir.1975). We would certainly act contrary to this spirit should we affirm this conclusion of the trial court. Had RRUS advanced arguments of economic necessity in meeting its burden of production, a different situation might exist; the trial court, however, should not have taken matters into its own hands, especially in the face of evidence suggesting pretext.

■ The court stated that the investment rationale was not "the total basis of the decision." It did not, however, explain what the additional basis was. It also concluded that Chaiffetz had failed to prove RRUS's intent to discriminate. No further explanation accompanied this conclusion, however; instead, the court simply declared that "there was no intentional discrimination against American employees by defendants because of national origin." As is mentioned above, evidence in the record suggests that, in fact, RRUS intended to discharge the Americans first. This being so, the court's conclusory finding is insufficient as a matter of law.

Fed.R.Civ.P. 41(b) states that "if the court renders judgment on the merits against the plaintiff, the court shall make

findings as provided in Rule 52(a)." A finding of intentional discrimination *vel non* is a finding of fact. *Pullman-Standard v. Swint,* 456 U.S. 273, 287–90, 102 S.Ct. 1781, 1789–91, 72 L.Ed.2d 66 (1982). We must therefore scrutinize this finding in the light of caselaw applying Rule 52(a). Doing so, we quickly discover that, if the plaintiff has presented evidence of pretext, a conclusory one-sentence finding that merely brushes that evidence aside cannot stand:

> In an employment discrimination case, a plaintiff may prevail either by persuading the court that a discriminatory reasons more likely motivated the employer or by showing that the employer's proffered explanation is not worthy of credence. The ultimate issue, however, and the one to be decided by the court, is whether the employer intentionally discriminated against the plaintiff. If the trial court believes the employer's explanation of its motivation, the court may not merely state, in conclusory terms, that the plaintiff has failed to prove the employer's suggested reason to be a pretext for invidious discrimination or that there is not evidence of discriminatory treatment. It must at least refer to the evidence tending to prove and disprove the merits of the proffered explanation and state why the court reached the conclusion that the explanation has not been credited.

*Ratliff v. Governor's Highway Safety Program,* 791 F.2d 394, 400–01 (5th Cir.1986) (footnote omitted); *see also Sylvester v. Callon Energy Services, Inc.,* 724 F.2d 1210 (5th Cir.1984), *and Redditt v. Mississippi Extended Care Centers, Inc.,* 718 F.2d 1381 (5th Cir.1983).

■ Fact finding is the trial court's province, and we hold no warrant to review *de novo* the facts of a case. If Rule 52 left any room for doubt, *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), has removed it. We do remain responsible, however, for the ultimate justness of trial determinations drawn before us. Since this is so, we must

know the basis of the trial court's decisions; "this Court cannot be left to second-guess the factual basis for the district court's conclusion." *Redditt,* 718 F.2d at 1386. Review *is* our responsibility, and we cannot review bare conclusions. We therefore cannot accept the trial court's conclusion of no intentional violation of Title VII as an alternative reason for dismissing the case against RRUS. In short, our duty to respect the trial court's factual determinations gives rise to a reciprocal one on its part to tell us the reasons for them. This one—a mere statement of a result—cannot stand.

■ From the bench, the court also ruled that RRHL was not Chaiffetz's employer and therefore granted its motion for involuntary dismissal. Again, we are given no explanation and the court makes no reference to this issue in its written findings and conclusions. We see no indication that it considered the formula of *Trevino v. Celanese Corp.,* 701 F.2d 397 (5th Cir.1983), a formula that lets one decide whether a parent company is the *de facto* employer of the plaintiff. We there laid down the following criteria for determining whether distinct entities constitute an integrated enterprise:

(1) interrelation of operations;

(2) centralized control of labor relations;

(3) common management; and

(4) common ownership or financial control.

Id. at 404. We placed highest importance on the second factor, rephrasing and specifying it so as to boil down to an inquiry of "what entity made the final decisions regarding employment matters related to the person claiming discrimination." *Id., quoting Odriozola v. Superior Cosmetic Distributors, Inc.,* 531 F.Supp. 1070, 1076 (D.P.R.1982). The court's conclusion, absent consideration of *Trevino,* simply begs the question of what is an "employer" in this context; and again it makes no fact findings to support this conclusion, disabling us from applying the *Trevino* test ourselves. We are therefore constrained to reverse the court's granting of RRHL's motion to dismiss.

■ On remand, however, the court need not consider Chaiffetz's § 1981 claim; it correctly concluded that this provision is inapplicable here. We have noted before that § 1981 "does not encompass discrimination based solely on national origin." *Bullard v. Omi Georgia, Inc.,* 640 F.2d 632, 634 (5th Cir.1981). Chaiffetz tries to avoid *Bullard* by characterizing his case as one involving "reverse discrimination on the basis of alienage." Both the Supreme Court and the Fifth Circuit have held that § 1981 applies to aliens. *See Graham v. Richardson,* 403 U.S. 365, 377, 91 S.Ct. 1848, 1854, 29 L.Ed.2d 534 (1971); *Guerra v. Manchester Terminal Corp.,* 498 F.2d 641, 653–54 (5th Cir.1974). The Supreme Court has also ruled that § 1981 prohibits discrimination against whites. *McDonald v. Santa Fe Trails Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). Chaiffetz thus argues that, given "the Supreme Court's interpretation of the applicability of § 1981 to reverse discrimination on the basis of race, it is axiomatic that similar reverse discrimination against American citizens in favor of non-citizens is also proscribed." This does not follow. Discrimination against whites is racial discrimination, but (in America) discrimination against Americans can never be discrimination based on *alienage.* It can only be discrimination based on national origin, and we reaffirm our view expressed in *Bullard:* relief under § 1981 is unavailable to Chaiffetz.

Because the trial court erred in granting appellees' Rule 41(b) motions, we must reverse its judgment and remand this case for further proceedings. On remand, the trial court need not require Chaiffetz to offer again the evidence already introduced. In any event, he "should be allowed to supplement the present record, in chief or by rebuttal, with any evidence that could properly have been admitted at the first trial of these issues." *Riegel Fiber*

*Corp. v. Anderson Gin Co.,* 512 F.2d 784, 793 (5th Cir.1975).

REVERSE AND REMANDED.